UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID J. KATAJA, JR.,

        Petitioner,                Civil No. 2:11-cv-13125

v.                               HONORABLE STEPHEN J. MURPHY, III

BILL SCHUETTE,[1]

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND GRANTING IN PART AND DENYING IN PART CERTIFICATE OF
APPEALABILITY**

    David J. Kataja Jr. was convicted in 2007 in the Oakland Circuit Court of

second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(A), attempted

second-degree criminal sexual conduct, Mich. Comp. Laws § 750.92, and furnishing

alcohol to a minor, Mich. Comp. Laws § 436.1701(1). Kataja was sentenced to 28½ months

to 15 years for the criminal sexual conduct conviction, 2 to 5 years for the attempted

criminal sexual conduct conviction, and 60 days for the furnishing alcohol conviction.

    Kataja commenced this action through counsel in 2011. Along with his petition,

Kataja filed a motion to stay the case so that he could return to the state courts and

exhaust additional claims. After a motion to extend the stay and prolonged state court

---

[1] Because Petitioner has been discharged from parole, the proper Respondent in
such cases is the Attorney General for the State of Michigan, Bill Schuette. *See* Notes
to Rule 2(b) of the Rules Governing Section § 2254 Cases in the United States District
Courts. Accordingly, the Court substitutes Michigan Attorney General Bill Schuette as
Respondent. Petitioner's discharge does not moot the petition, as Petitioner faces the
collateral consequences of being a convicted sex offender. *See Gentry v. Deuth*, 456
F.3d 687, 693 (6th Cir. 2006).

proceedings, Kataja moved to reopen the case in 2015. The motion was granted, Respondent filed a responsive pleading, and the matter is ready for decision.

The amended petition raises five claims: (1) the prosecutor committed misconduct by suppressing exculpatory evidence and making improper comments in closing argument, (2) Kataja was denied the effective assistance of trial counsel, (3) Kataja was denied the effective assistance of appellate counsel, (4) Kataja was denied his right to present a defense when he was required to use the Freedom of Information Act to discover exculpatory evidence during post-conviction proceedings, and (5) Kataja's rights under the Double Jeopardy Clause were violated. The petition will be denied because the claims are without merit. The Court will, however, grant Kataja a certificate of appealability with respect to part of his second claim, but deny a certificate of appealability with respect to his other claims.

## BACKGROUND

Kataja was charged with touching the breast of a twelve-year-old girl ("the Victim"). At trial, the Victim testified that in the fall of 2006 she met the twenty-year-old Kataja through his then-girlfriend, Lisa Mascaro ("Mascaro"). Kataja lived nearby. The Victim also knew Kataja's younger brother, Matt, who was thirteen years old. Shortly after meeting, Kataja and the Victim began dating.

The incident giving rise to the charges occurred in December 2006. The Victim testified that Kataja picked her up from school and they went to his house. Kataja served an alcoholic drink to the Victim. While sitting on a futon in Kataja's room, Kataja put his arms around the Victim and tried to put his hand up her shirt. She stopped him by pulling

his hand out. Kataja tried again and on the second attempt succeeded in putting his hand under her bra and onto the Victim's breast. He kept it there for a few minutes. Kataja then took his hand out from under her shirt. Matt was in the room, but facing away playing a computer game. Another person, Aaron Brannon ("Brannon") came in and out of the room.

The Victim did not immediately tell anyone what happened. She explained that she knew what Kataja did was wrong, but she did not want to spoil her friendship with him. The friendship spoiled shortly after, however, when the Victim angered Kataja by supporting Mascaro during an argument between Mascaro and Kataja. Kataja called the Victim names and they stopped speaking.

After the argument, the Victim called Mascaro and told her about Kataja touching her breast. The Victim explained that she and Kataja were no longer friends and she no longer had a reason to hide what had occurred. Unbeknownst to the Victim, her friend Lindsey Sutterfield ("Lindsey") heard about the incident. The Victim testified that Lindsey told her that Kataja had also touched her breast. Two weeks after the incident, the Victim called the police and spoke with an individual at the Care House—an organization seeking to prevent child abuse.

At trial, two relevant witnesses for the prosecution testified. Kataja's friend, James Tawse ("Tawse"), testified that Kataja began hanging out with the Victim in the summer of 2006. Kataja told Tawse that he loved the Victim, and Tawse replied that she was too young for him. Tricia Schuster, a forensic interviewer at Care House, testified regarding forensic interviewing protocols, the characteristics of child sexual assault victims, and reasons why victims may delay disclosure of an incident.

The defense called five witnesses. Officer Edward Pilch of the Milford Village Police

3

Department testified that he interviewed Kataja. Kataja denied that he committed the alleged acts, but admitted that he was on the futon with the Victim on the evening in question. Pilch testified that he had prior contacts with the Victim and her mother.

Aaron Brannon testified that he recalled the Victim being at Kataja's house one night when he was there playing video games with Matt. This was the first time Brannon had seen the two together. Brannon, Matt, and Kataja took turns playing the game. Brannon testified that while he and Matt were sitting in front of the computer playing the game, Kataja and the Victim were seated behind them on the futon, but Brannon did not see any physical contact between Kataja and Knox.

Lindsey Sutterfield testified that she was fifteen years old at the time of trial. She had been best friends with the Victim, but they were no longer friends. Lindsey denied that the Victim told her about the alleged incident. She also denied telling the Victim that Kataja had done the same thing to her.

Lisa Mascaro testified that she and Kataja were long-time friends and shared a romantic relationship. Mascaro testified that she was no longer friends with the Victim. Shortly after Mascacro stopped dating Kataja, she had a conversation with the Victim who was upset about Mascaro and Kataja fighting. The Victim told Mascaro that something happened with Kataja about two weeks earlier, but did not appear upset. Mascaro denied Victim's testimony that she told Mascaro about the incident shortly after it occurred.

Kataja's younger brother Matt testified that he and the Victim had dated about a year earlier, and that the Victim had also hung out with Kataja. One day Matt, Kataja, and Brannon were playing a computer game with the Victim in the room. Matt testified that he and Kataja talked about the game as he played it. He testified that he was sitting at the

computer, with the Victim and Kataja sitting behind him on the futon. Matt testified that he did not see anything unusual that evening, and he did not see any physical contact between Kataja and the Victim.

Following closing arguments and instructions, the jury found Kataja guilty on all charges.

After trial, Kataja filed motions for discovery, an evidentiary hearing, and a new trial. The motions contended that Kataja was entitled to relief because of ineffective assistance of counsel and prosecutorial misconduct. The trial court required Kataja to obtain police reports through the Freedom of Information Act ("FOIA") to support his claims.

At a hearing held on November 5, 2008, Kataja indicated that the police department's response to the FOIA request included a heavily redacted report that potentially contained evidence that would impeach the Victim. The report allegedly involved a separate criminal sexual misconduct allegation, but the redactions limited the report's clarity and probative value. The trial court expressed concern that ordering production of unredacted reports would violate FOIA. ECF 14-7, PgID 929.

Another hearing was held on April 8, 2009, at which the trial court denied Kataja's post-conviction motions, and declined to conduct an *in camera* review of an unredacted copy of the police report. The court found that trial counsel was not ineffective for failing to obtain the police report. The court further ruled that counsel was not ineffective in failing to object to the prosecution's expert witness testimony, failing to object to inadmissible character evidence, or failing to object to the conduct of the prosecutor. ECF 14-8.

Appellate counsel then filed a claim of appeal in the Michigan Court of Appeals. The brief on appeal raised two claims:

I. Defendant is entitled to a new trial where his trial counsel was ineffective in (1) failing to thoroughly investigate, (2) failing to object to inadmissible character evidence, (3) failing to object to the unqualified testimony of the Care House witness, and (4) failing to object to the prosecution's misconduct in shifting the burden of proof.

II. The trial court erred in denying defendant's post-trial motion for discovery, thereby denying him the constitutional right to present a defense, where the evidence was not "mere impeachment" nor was it prohibited from discovery under the "rape shield" statute and where the Freedom of Information Act (FOIA) did not prevent an *in camera* review of the requested documents nor the disclosure of those documents to defendant.

ECF 14-9, PgID 964.

The Michigan Court of Appeals affirmed the trial court decision in an unpublished opinion. *People v. Kataja*, No. 282953, 2009 WL 3837181 (Mich. Ct. App. Nov. 17, 2009). Kataja subsequently filed an application for leave to appeal in the Michigan Supreme Court, which denied the application. *People v. Kataja*, 487 Mich. 853 (2010) (Table).

Kataja then filed his habeas petition with the Court, along with a motion to stay the case while he returned to the state court to exhaust his state court remedies with respect to additional claims. The Court granted the motion.

Kataja then returned to the state trial court and filed a motion for relief from judgment, raising eight claims. ECF 14-11. The trial court found that the claims lacked merit, determined that Kataja failed to demonstrate good cause and actual prejudice for failing to raise the claims in his direct appeals as required by MCR 6.508(D)(3), and denied the motion for relief from judgment. ECF 14-15. The Michigan Court of Appeals denied Kataja's leave to appeal because the claims "could have been raised previously" and Kataja "failed to establish both good cause for failing to previously raise the issues and actual prejudice from the irregularities alleged." ECF 14-6, PgID 1375. The Michigan

Supreme Court similarly denied relief. *People v. Kataja*, 497 Mich. 1022 (2015) (Table).

## LEGAL STANDARD

If claims raised by a state prisoner in a habeas petition were decided on the merits by a state court, federal district courts possess circumscribed authority to review the constitutional claims. 28 U.S.C. § 2254(d). Relief is available only if the state court adjudication was "contrary to" or resulted in an "unreasonable application of clearly established Federal law[.]" Section 2254(d) serves as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quotations omitted).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

"[T]he 'unreasonable application' prong of [the statute] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413.) "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's

decision." *Richter*, 562 U.S. at 101 (quotation omitted); *see also Woods v. Etherton*, 136 S.Ct. 1149, 1152 (2016) (finding habeas relief precluded if state court decision is "not beyond the realm of possibility [from what] a fairminded jurist could conclude").

## DISCUSSION

I.    Procedural Default

Respondent asserts that review of several of Kataja's claims is barred because the claims were not presented to the state courts on direct review and Petitioner failed to demonstrate "good cause" or "actual prejudice" under Michigan Court Rule 6.508(D)(3) for failing to previously raise the claims. Procedural default, however, is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Additionally, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). A decision on the merits is appropriate where it serves judicial economy or review of procedural default involves "complicated issues of state law." *Lambrix*, 520 U.S. at 525. The Court shall proceed directly to the merits in the interest of judicial economy because Kataja alleges that his attorneys were ineffective for failing to preserve and present the defaulted claims on direct appeal.

II.    Prosecutorial Misconduct

Kataja's first claim raises several allegations of prosecutorial misconduct. Kataja asserts that the prosecutor failed to disclose evidence that the Victim made a prior false

allegation of being sexually assaulted. He also claims that the prosecutor improperly bolstered the Victim's credibility by falsely claiming that she consistently described the assault over time. Finally, he alleges that the prosecutor misrepresented the evidence presented during closing argument. The state court adjudication of these claims was not unreasonable.

A. Kataja's claim that the failure to disclose the Victim's prior false allegation of sexual assault constituted prosecutorial misconduct is without merit.

The first allegation of prosecutorial misconduct concerns the information contained in the redacted police report that appellate counsel obtained through a FOIA request during Kataja's direct appeal. Kataja contends that the report contains exculpatory evidence that the prosecutor was required to disclose prior to trial.

To prevail on a claim that the prosecutor withheld exculpatory evidence, a habeas petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 683 (1985).

In *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice

must have ensued. "Prejudice (or materiality) in the *Brady* context is a difficult test to meet[.]" *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002). A habeas petitioner bears the burden of showing that the prosecution suppressed exculpatory evidence. *See Bell v. Howes*, 703 F.3d 848, 853 (6th Cir. 2012).

The police report at issue redacted most of the names, but even assuming the Victim was involved in the incident, the police report does not contain exculpatory information. The report demonstrates that one of Kataja's neighbors, William Strachen, was alleged to have allowed a neighborhood child to touch his "manhood." ECF 10-6, PgID 318. According to Strachen's affidavit, the girl who had allegedly "touched his manhood" was "Tracy's daughter" and not the Victim. ECF 10-3, PgID 295. Strachen denies any such allegation. *Id.* at 297. There is no allegation in the report that Strachen molested the Victim, that the Victim accused Strachen of molesting her, or that the allegation was false. The prosecution was not required to turn over the police report because it lacks any information favorable to Kataja as exculpatory or impeachment evidence.

Kataja points to three affidavits in which the individuals indicate that the Victim accused Strachen of molesting her. ECF 10-3, PgID 287, 289, 294. There is no nexus, however, between the police report and the proffered affidavits. Further, Kataja fails to show that the allegations contained in the affidavits were known to the police or prosecutor. The prosecution does not have a *Brady* obligation for information it does not control. *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). Again, the redacted police report, even read in a light most favorable to Kataja, does not indicate that the Victim accused Strachen of molesting her; it concerned an allegation made by a different child's mother.

In short, even if the Victim had previously accused Strachen of molesting her, there

is no indication that the allegation was contained in the identified police report or known by the authorities. Rather, the information regarding the prior allegation came from three private individuals signing affidavits post-trial. Therefore, there was no exculpatory evidence wholly within the control of the prosecution withheld from the defense. Kataja's first claim of prosecutorial misconduct is without merit.

B. The state court's decision to deny relief from judgment because of alleged prosecutorial misconduct during trial is not objectively unreasonable.

Kataja claims that the prosecutor engaged in prosecutorial misconduct during closing arguments and rebuttal. The claims were presented to the state courts in Kataja's motion for relief from judgment and rejected on the merits.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). A prosecutor's improper comments violate a criminal defendant's constitutional rights only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (rejecting a petitioner's due process claim because prosecutorial misconduct did not render the trial fundamentally unfair). To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012).

1. The state court's decision regarding the prosecutor's closing argument was not objectively unreasonable.

Kataja asserts that the prosecutor made two false statements during her closing

argument. First, she stated that the Victim's account of the sexual assault was consistent during her forensic interview and her testimony at the preliminary examination and trial. Second, the prosecutor misstated the amount of time that Brannon was in the room the night of the incident.

The state trial court denied both claims on the merits finding that, while both statements were erroneous because they were unsupported by the evidence, any error did not deny Kataja a fair trial. ECF 14-15, PgID 5–6, 8. The state court's decision did not constitute an objectively unreasonable application of the clearly established constitutional standard. Defense counsel cross-examined the Victim and exposed her inconsistent testimony. *See, e.g.* ECF 14-3, PgID 157, 198; 170, 188; 182–83. In closing argument, defense counsel focused on the Victim's inconsistences asserting that they proved she "[m]ade it up as she went along." ECF 14-4, PgID 823. Subsequently, the jury was instructed that the attorneys' arguments were not evidence and that it should decide based only on the presented evidence. *Id.* at 849.

"[J]uries are presumed to follow their instructions," *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and a trial court generally can correct improprieties in a prosecutor's closing arguments by instructing the jury that closing arguments are not evidence. *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011). The trial court instructed the jury that the lawyers' arguments were not evidence. Denial of Kataja's claim was appropriate.

> 2. The state court's decision regarding the prosecutor's rebuttal was not objectively unreasonable.

Kataja alleges that during rebuttal the prosecutor represented that Kataja told Officer Pilch that Aaron Brannon was in the room with Kataja and the Victim for only thirty minutes.

ECF 14-4, PgID 844. Brannon testified on cross-examination that he had been in the room with the Victim and Kataja for about two hours, but had not been present the entire time Kataja was in the room with the Victim. ECF 14-3, 753–54. Kataja asserts that the prosecutor's statement about how long Brannon was in the room was not supported by the record.

The prosecutor's representation that Brannon was in the room for only 30 minutes was not supported by the record, as the state trial court determined. The prosecutor's larger point, that the sexual assault could have and, in fact, did occur while Brannon was not in the room was reasonably supported by the record. The implication of the prosecutor's statements did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process" or fundamentally unfair. *Darden*, 477 U.S. at 181. The *Darden* standard "is a very general one, leaving courts more leeway" and greater discretion to make case-by-case decisions. *Parker*, 567 U.S. at 48.

III.    Ineffective Assistance of Counsel

Kataja's second habeas claim asserts that he was denied the effective assistance of trial counsel. He bases the claim on several alleged shortcomings: counsel's alleged failure to conduct a thorough investigation of the veracity of the Victim's allegations; counsel's failure to object to inadmissible bad-character evidence, inadmissible expert witness testimony, or prosecutorial misconduct; and counsel's failure to assert a violation of Kataja's double jeopardy protections.

To prevail on an ineffective assistance of counsel claim, Kataja must show that his counsel's "performance was deficient and that the deficient performance prejudiced the defense." *Hodges v. Colson*, 711 F.3d 589, 613  (6th Cir. 2013) (citing *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984)). Kataja must establish counsel's deficiency by showing that he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To satisfy the prejudice prong, Kataja must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Both components need not be addressed if Petitioner fails to meet one of them. *Id.* at 697.

> A. The state court's finding that counsel's failure to discover recantation evidence or an alleged prior false allegation was not ineffective assistance of counsel is not objectively unreasonable.

Kataja's first basis for his ineffective assistance of counsel claim involves two distinct, alleged errors. The first alleged error was counsel's failure to investigate the veracity of the Victim's allegation and discover witnesses that allegedly heard the Victim recant her allegation against Kataja. The second error was counsel's failure to conduct a thorough investigation prior to trial. Kataja avers that his counsel should have discovered that the Victim allegedly made prior false accusations of being molested, and that she had numerous previous contacts with law enforcement. He claims that presentation of this impeaching information to the jury was critical to his case.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The investigatory duty includes "the obligation to investigate all witnesses who may have information concerning" the client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). Counsel's decisions must be reasonable; whether they were strategic is not relevant. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). Failure to investigate resulting

from inattention, rather than reasoned strategic judgment, is unreasonable. *See Wiggins*

*v. Smith*, 539 U.S. 510, 526 (2003). Importantly,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

*Strickland*, 466 U.S. at 690-91.

Kataja asks the Court to conduct a hearing on the claims, but under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d), when a federal habeas court reviews a state court's meritorious decision, the federal court may not expand the record beyond that considered by the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Accordingly, the Court must determine the reasonableness of the state court's adjudication of Kataja's ineffective assistance of counsel claims on existing trial record.

### 1. Failure to discover recantation evidence did not constitute ineffective assistance of counsel.

Kataja's first allegation of ineffective assistance of counsel was rejected on direct appeal because Kataja did not present any impeaching evidence and thus did not satisfy the "prejudice" prong. In his motion for relief from judgment in the trial court, Kataja produced seven affidavits and requested an evidentiary hearing to expand the record. *See* ECF 10-3.[2] Only the affidavits of Leah and Lindsey Sutterfield are relevant to the Court's analysis of the recantation evidence.[3]

---

[2] Compiling affidavits of Leah and Lindsey Sutterfield, Brian Strunk, Autumn Rosa, Joe Kerby, James Tawse, and William Strachen.

[3] While each affidavit, on its face, contains exculpatory statements, Kataja makes no offer of proof that prior to trial either he or defense counsel knew of or through

The trial court denied relief without a hearing finding that Kataja again failed to satisfy *Strickland*'s prejudice prong.[4] Defense counsel's failure to elicit testimony from the Sutterfield sisters that the Victim recanted her allegations against Kataja about a month before trial was not prejudicial for two reasons. First, defense counsel did otherwise effectively challenge the Victim's credibility. Second, the trial court found that it was reasonable for defense counsel to expect the sisters to volunteer such obviously relevant information during their interviews. The court found it would be unreasonable to require an attorney to elicit witness disclosure of impeachment testimony of which he had no reason to know. ECF 14-15, PgID 1368–70.

While it is true that defense counsel attacked the Victim's credibility in numerous ways, none of those approaches offers the same exculpatory value as testimony that the Victim recanted her allegations against Kataja. Simply because defense counsel challenged the Victim's credibility does not mean that Kataja was not prejudiced by the exclusion of potentially exculpatory evidence.

Nevertheless, the second rationale proffered by the state trial court provides a reasonable basis for rejecting Kataja's claim. In light of the record, it was reasonable for the trial court to conclude that if, in fact, the Sutterfield sisters heard the Victim recant, a reasonably competent attorney would fairly expect them to volunteer that critical piece of

---

reasonable investigation would have known of Brian Strunk, Autumn Rosa, Joe Kerby, or their testimony. Of the remaining affidavits, only the affidavits of Leah and Lindsey Sutterfield discuss the Victim allegedly recanting that Kataja touched her breast.

[4] Because no hearing was held on the claim, the record is silent as to the extent of defense counsel's pretrial investigation or whether he knew about all of these witnesses.

information. Moreover, the trial record tends to belie the veracity of the Sutterfield sisters' affidavits. In response to defense counsel's inquiry about whether the Victim told Lindsey about Kataja's molestation, Lindsey responded "no." ECF 14-3, PgID 761. Given the affidavit, Lindsey ought to have responded "yes" and then noted that the Victim recanted. ECF 10-3, PgID 287. Affording the trial court the deference required by AEDPA, it was reasonable to find that defense counsel's performance in interviewing and investigating any exculpatory information that the Sutterfield sisters possessed was not deficient.

2. Failure to discover the alleged prior false allegation of sexual misconduct did not constitute ineffective assistance of counsel.

Kataja's allegation of ineffective assistance counsel as to the previous false allegation of sexual misconduct against William Strachen was rejected for failure to demonstrate "prejudice." In his motion for relief from judgment, Kataja produced seven affidavits and requested an evidentiary hearing to expand the record. *See* ECF 10-3.[5] Only three of the affidavits are relevant here.[6] Only the Sutterfield sisters and James Tawse remain as possible sources of information. All three affidavits state that the Victim told the individuals that Strachen molested her.[7] Leah Sutterfield spoke with defense counsel, and

---

[5] Compiling affidavits of Leah and Lindsey Sutterfield, Brian Strunk, Autumn Rosa, Joe Kerby, James Tawse, and William Strachen.

[6] While each affidavit, on its face, contains exculpatory statements, Kataja makes no offer of proof that prior to trial either he or defense counsel knew of or through reasonable investigation would have known of Brian Strunk, Autumn Rosa, Joe Kerby or their testimony. Moreover, for reasons already stated, the Court rejects the notion that the undisclosed police report contains evidence of a prior false allegation. Rather, and according to Strachen himself, that report concerned an incident "Tracy's daughter", the daughter of another neighbor.

[7] Strachen's affidavit predictably denies the allegation.

17

Lindsey Sutterfield and James Tawse testified at trial. If they told defense counsel about the prior allegation of molestation, a reasonable investigation might have led defense counsel to Strachen. Yet, because the trial court did not hold a hearing on the claim, there is no record as to the extent of defense counsel's investigation, the thoroughness of his interviews with these individuals, or his trial strategy.

The trail court denied relief on the claim on the grounds that Kataja did not offer "concrete evidence" that the allegation against Strachen was false. ECF 14-15, PgID 1369–70. In other words, the state evidentiary laws would have prohibited Kataja from entering the evidence because he "was not entitled to have the court conduct a trial within the trial to determine whether there was a prior accusation and whether that prior accusation was true or false." *People v. Williams*, 191 Mich. App. 269, 274 (1991).

The trial court's conclusion was not unreasonable. Kataja relies upon *Mathis v. Berghuis*, 90 F. App'x 101 (6th Cir. Mich. Jan. 27, 2004) for the proposition that unsubstantiated rape allegations are admissible under Michigan law to impeach a complainant. *Mathis* is inapposite, however, because it involved a situation in which "the falsity or potential falsity of the prior allegation [was] evident." *Mathis*, 90 F. App'x at 107. Kataja does not offer undisputed evidence of a prior false allegation of rape. The only evidence of falsity is Strachen's unsurprising denial of having molested anyone. Inasmuch as the falsity of the alleged prior allegation would have been disputed, it is unlikely the proposed evidence would have been admissible. *See People v. Adamski*, 198 Mich. App. 133, 142 (1993) (evidence of prior false accusation of rape properly excluded where insufficient proffer of falsity was made); *Cruz v. Roggenbuck*, No. 11-15502, 2014 WL 764850, at *5 (E.D. Mich. Feb. 26, 2014) (defendant failed to offer "concrete evidence" of

falsity, therefore state court did not err in excluding evidence). Accordingly, it was not unreasonable for the trial court to deny relief based on Kataja's failure to show that the prior false allegation evidence would have been admissible.

B. The state court's finding that counsel's failure to object to inadmissible bad character evidence was not ineffective assistance of counsel is not objectively unreasonable.

Kataja next contends that his trial counsel was ineffective for failing to object to the introduction of testimony of his prior bad acts. Specifically, Kataja objects to evidence that he provided alcohol to minors and the Victim's testimony that Lindsey Sutterfield told the Victim that Kataja molested Lindsey.

The Michigan Court of Appeals rejected these claims on the merits during Kataja's direct appeal. That court determined that the introduction of evidence that Kataja provided alcohol to the Victim assisted the jury in understanding the relationship between Kataja and the Victim. Counsel made a reasonable decision to not object to the evidence because objection to the evidence would have been meritless. *Kataja*, 2009 WL 3837181, at *2 (citing *People v. Goodin*, 257 Mich. App. 425, 433 (2003)).

As for the Victim's testimony about Lindsey's allegations against Kataja, the Michigan Court of Appeals found that Kataja's counsel called Lindsey as a defense witness. Lindsey denied telling the Victim that Kataja "had inappropriately touched her." *Id.* Defense counsel further used the testimony to discredit the Victim during his closing argument. That decision "reflect[ed] reasoned trial strategy" that the court did not second-guess. *Id.*

The Michigan Court of Appeals decision did not involve an unreasonable application of the clearly-established *Strickland* standard. The state court found that the testimony regarding the provision of alcohol was admissible under state law. The Court cannot

question a state court's determination of state evidentiary law. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). An objection by counsel to the introduction of this evidence would have been futile, and counsel cannot be deemed ineffective for failing to raise a meritless objection. See *Bradley v. Birkett*, 192 F. App'x 468, 475 (6th Cir. 2006).

With respect to the Victim's testimony that Lindsey Sutterfield told the Victim that Kataja molested her, it was reasonable to conclude that counsel used the testimony to attack the Victim's credibility. Lindsey denied the allegation that she was molested during her own testimony, dispelling any prejudicial impact of the Victim's testimony and undermining the Victim's credibility. The claim was reasonably rejected by the Michigan Court of Appeals.

C. The state court's finding that counsel's failure to object to inadmissible expert testimony was not ineffective assistance of counsel is not objectively unreasonable.

Kataja further asserts that his counsel was ineffective for failing to object to the testimony of Tricia Schuster, the Care House forensic interviewer. The Michigan Court of Appeals rejected the claim on the merits because even though Schuster "offered testimony based on her knowledge, experience[,] and training[,] but was never formally qualified as an expert witness," Schuster "was more than qualified to offer expert testimony on forensic interviews and the methods used at Care House." *Kataja*, 2009 WL 3837181, at *3. Any testimony provided by Schuster for which she was not an expert—such as the truthfulness of the Victim during her interview—was found to be harmless. *Id.*

The Michigan Court of Appeals decision did not involve an unreasonable application of the clearly-established *Strickland* standard. The state court found that Schuster's testimony would have qualified as "expert" were the issue pressed. The Court cannot

question a state court's determination of state evidentiary law. *Estelle,* 502 U.S. at 72. Moreover, the state court determined that any perception that Schuster testified to the truthfulness of interviewees at Care House was reasoned trial strategy. A reasonable reading of the trial transcript indicates that defense counsel was endeavoring to undermine Schuster's credibility by attempting to elicit testimony from her that none of the thousands of children she saw at Care House ever lied. While the tactic was unsuccessful, it was reasonable for the state appellate court to find that defense counsel's tactic did not constitute objectively deficient performance.

D. Counsel's failure to object to alleged prosecutorial conduct did not constitute ineffective assistance of counsel.

Kataja contends that his counsel was ineffective for failing to object to the alleged incidents of prosecutorial misconduct discussed above. The Court already found that the prosecutor's conduct does not entitle Kataja to relief. Therefore, Kataja's counsel was not ineffective for failing to raise an objection. *Bradley*, 192 F. App'x at 475.

E. Counsel's failure to assert a violation of Kataja's double jeopardy rights did not constitute ineffective assistance of counsel.

Kataja finally claims that his counsel failed to assert a violation of his double jeopardy rights. As discussed below, however, no such violation occurred, and therefore there was no basis on which to base an objection.

Because a fairminded jurist could reasonably reject each of Kataja's claims of ineffective assistance of counsel, he has failed to demonstrate entitlement to relief.

IV.    Ineffective Assistance of Appellate Counsel

Kataja claims that his appellate counsel was ineffective for failing to properly develop and raise on direct appeal the claims he raised in his motion for relief from judgment.

The Court, as discussed above, determined that the underlying claims are without merit. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). It is not ineffective assistance for appellate counsel to decide not to raise meritless claims. *See Smith v. Murray*, 477 U.S. 527, 536 (1986); *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."). Therefore, the ineffective assistance of appellate counsel claim fails.

V.    Denial of Post-Appeal Discovery

Kataja claims that the trial court's denial of post-appeal discovery violated his right to present a defense. The violation allegedly occurred because the trial court required Kataja to obtain the redacted police report about Strachen through FOIA and the court refused to conduct an *in camera* review of the report. The Michigan Court of Appeals found that Kataja's constitutional rights were not implicated by the denial of discovery. *Kataja*, 2009 WL 3837181, at *5–6.

"There is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). A claim that a state court failed to apply state discovery rules "is not cognizable on [federal] habeas [review], because it is not a constitutional violation." See *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002). Habeas relief may not be based upon perceived error of state law. *Estelle*, 502 U.S. at 67–68. Kataja's discovery claim does not present a cognizable basis for granting habeas relief.

VI.    Double Jeopardy Claim

Finally, Kataja asserts that his rights under the Double Jeopardy Clause were

violated when he was convicted of both second-degree criminal sexual conduct and attempted second-degree criminal sexual conduct where the charges related to a single event. The trial court rejected that assertion on the merits finding that "there was evidence that [Kataja] attempted to touch [the Vicitm's] breast with his hand . . . and then succeeded in touching her breast on his second attempt." ECF 14-15, PgID 1367. The state trial court further acknowledged that double jeopardy protections do not apply "if one crime is complete before the other takes place, even if the offenses share common elements[.]" *People v. Lugo*, 214 Mich. App. 699, 708 (1995).

The decision was reasonable, and Kataja's argument to the contrary is insensitive to the record. The Victim testified that Kataja twice attempted to touch her breast. She prevented the first attempt, but he succeeded in touching her bare breast on the second attempt. ECF 14-3, PgID 614–17. The acts were separate ones, albeit spanning only a brief period. A finding that there were two distinct acts "necessarily precludes a violation of the double jeopardy clause." *Costo v. United States*, 904 F.2d 344, 346 (6th Cir. 1990). Kataja's Double Jeopardy claim is without merit.

## CERTIFICATE OF APPEALABILITY

Before Kataja may appeal the Court's dispositive decision, "a circuit justice or judge" must issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because the Court rejected Petitioner's habeas claims on the merits, to satisfy § 2253(c)(2), he must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition

should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted).

The Court finds that, given the state court's failure to hold a hearing on the claim, reasonable jurists could debate whether Petitioner established that his trial counsel was ineffective for failing to present evidence that the Victim recanted and made prior false allegations of rape. The Court will therefore grant a certificate of appealability with respect to that part of his ineffective assistance of trial counsel claim. The Court finds, however, that reasonable jurists would not debate whether Petitioner's other claims merit relief. Accordingly, a certificate of appealability will not be granted with respect to those claims.

## ORDER

For the foregoing reasons, the Court **DENIES** the Petition for Writ of Habeas Corpus, **GRANTS** a certificate of appealability with respect to the portion of Petitioner's ineffective assistance of trial counsel claim related to the recantation evidence and alleged prior false allegation, and **DENIES** a certificate of appealability with respect to Petitioner's remaining claims.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
Dated: October 16, 2017               United States District Court

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 16, 2017, by electronic and/or ordinary mail.

s/David Parker
Case Manager